# JOHNSON *v.* STATE

[No. 83, September Term, 1961.]

160

*Decided December 6, 1961.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Sybert, JJ.

*Morris Lee Kaplan,* with whom were *Frank J. McCourt* and *Nathan Stern* on the brief, for the appellant.

*Robert C. Murphy, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *James W. Murphy, Assistant State's Attorney,* on the brief, for the appellee.

Prescott, J., delivered the opinion of the Court.

Berchell Elwood Johnson was found guilty of robbery by a judge of the Criminal Court of Baltimore, sitting without a jury, and sentenced to ten years' confinement in the Penitentiary. He appeals.

The only question involved is whether the trial court's finding of guilt was clearly erroneous. Maryland Rule 741 c.

The proof, stated in a light most favorable to the State, was to the following effect. Jean Moore, a convicted prostitute, rented a first-floor, or basement, apartment, located at 1405 Eutaw Place. The appellant, who claimed Norfolk, Virginia, as his residence, spent two or three nights a week at this apartment; and his brother, Lacy, who was "going with" Jean, likewise, spent much time, or actually lived, at the apartment.

On the night of January 5, 1961, at about 8 P.M., one Fred Shuler went to the New Deal Tavern in Baltimore, where he met and drank with Jean Moore and Lacy Johnson, both being previously unknown to him. When the bar closed at 2 A.M. the following morning, Jean Moore invited Shuler to visit her apartment; and, upon her promise to meet him there later, he went to the apartment, accompanied by Lacy Johnson, one Ben Walker, and a Della Shelley. The appellant was in bed on the couch in the apartment when the group arrived. Almost immediately upon entry, Lacy grabbed Shuler, pressed a knife to his throat, and relieved him of his watch and money. Although Della Shelley, Ben Walker and the appellant were present and remained in the apartment throughout the robbery, all agreed (except Lacy and appellant, who attempted to implicate Walker), including Shuler, that Lacy was the only participant in the crime. All present were in accord that appellant took no part in the affair (which consumed only a minute or two), and he was not indicted or tried for any complicity therein.

That same morning, at approximately 7:30 A.M., one Gerald Hayes also went to the New Deal Tavern, which had been closed from 2 A.M. until 6 A.M. The record does not disclose whether Jean Moore had returned to her apartment after 2 A.M., or had remained out, drinking at other bars that stayed

open all night. At any rate, Hayes, like his predecessor, Shuler, became acquainted with and accepted an invitation from Jean to go to her apartment for "a little fun." After he had purchased a fifth of whiskey, they left the Tavern at about 9 A.M. and proceeded to her apartment. They had a "couple of drinks," got undressed, and went to bed. He, having worked the previous night, fell asleep shortly thereafter. When he awakened, his wallet was gone, and he asked Jean where his money was. Her answer was evasive, but when he threatened to call the police, she gave him $20.00 of the estimated $25.00 that he had with him, so he put the money in his wallet, placed the wallet in his pocket, and started to dress before leaving. (We now arrive at the crucial part of the testimony.) At this point, Lacy Johnson and the appellant, who had a broken arm with a cast on it and a fractured hip, came in. Hayes testified that Lacy struck him in the eye, and someone, Hayes did not know who, "hit [him] on the head." He was rendered unconscious, and, when he came to, he was on the street being picked up by a police officer (the officer stated that this occurred about 12:15 P.M.). His wallet, money, keys and penknife had been taken from him.

A State's witness testified that, at about this time, he saw Lacy, alone, bring "a fellow out" of the apartment, Lacy holding on his arm, and blood was "all over this fellow's face." This witness did not see the appellant outside the apartment at this time, but did see him on the inside.

Officer Steinwedel was present at the apartment when Lacy and the appellant were arrested very shortly after Hayes was robbed. Hayes' stolen property was found on Lacy, and none of it was in the possession of the appellant. The officer noticed blood upon the cast being worn by the appellant, a fact conceded by him. The appellant, when questioned shortly after his arrest, told Sergeant McKew that the blood got upon the cast when he assisted Hayes in getting up after his brother had knocked Hayes down, and he testified to the same effect at the trial.

The appellant, in his statement to the police and his testimony at the trial, denied any participation in the crime. (He did try to implicate Walker in the Shuler affair and to ex-

culpate his brother in the Hayes robbery by claiming that Hayes was assaulting Jean Moore when he and Lacy walked into the apartment.) Both Lacy and Jean Moore denied that the appellant ever hit Hayes or participated in any manner in robbing him. Lacy and the appellant each have bad records for previous criminal convictions.

Lacy and Jean Moore were found guilty under other indictments not here involved. The appellant, Lacy and Jean were jointly indicted for robbing Hayes, and all were found guilty. The appellant claims the trial court was clearly in error in finding him guilty on this record.

Everyone accused of crime is presumed to be innocent; and, in order to justify a finding of guilt, it is incumbent upon the State affirmatively to establish the defendant's guilt beyond a reasonable doubt. We have held that the presence of the accused at the scene of a crime is an important element that may be considered in determining the guilt or innocence of a person charged with the crime, *Tasco v. State*, 223 Md. 503, 509, 165 A. 2d 456; but presence, alone, at the place where a crime has been committed is not sufficient to establish participation in the perpetration of the crime. *Watson v. State*, 208 Md. 210, 117 A. 2d 549. We have also held that exculpatory statements by an accused are not binding upon, but may be disbelieved by, the trier of facts, *Shockley v. State*, 218 Md. 491, 148 A. 2d 371; and in *Vincent v. State*, 220 Md. 232, 237, 151 A. 2d 898, we stated the rule regarding the sufficiency of the evidence thus:

> "In every criminal case, evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be established, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created."

Applying the above principles of law to the facts of the instant case, we find that the accused, concededly, was at the scene of the robbery, but this, alone, will not suffice to sustain a conviction. There was no direct evidence that the de-

fendant participated in the robbery: the prosecuting witness testified that Lacy hit him in the eye, and someone (he could not say who) struck him on the head. All the other eye-witnesses to the offense stated that the appellant took no part therein (except to help the prosecuting witness up after he had been knocked to the floor). We must, therefore, examine the testimony further, and see if it be sufficient to support a rational inference beyond a reasonable doubt or to a moral certainty that the appellant participated, either as principal perpetrator or an aider or abettor, in the robbery.

The State suggests that a "broader view of the evidence supports a rational inference of a common criminal purpose between the appellant, Lacy Johnson, and Jean Moore, whereby the latter enticed victims to her apartment to be robbed by her confederates, the two Johnsons." The record supports this conclusion as to Lacy Johnson and Jean Moore, but not as to the appellant. Everyone agreed that the appellant had no hand in the first robbery referred to above, and he was neither indicted nor tried for any alleged participation therein. Nor was it shown that he received any portion of the meagre spoils of that affair. These facts do not establish the alleged "common criminal purpose" of the appellant, his brother and the brother's "girl friend," but, at least in some measure, tend to negate the same.

Due consideration of what we have just said, the appellant's physical condition, the fact that Lacy, alone, escorted the victim to the street, the further fact that all of the property from the victim was found upon Lacy, and the statements of all the eye-witnesses (except the prosecuting witness, who could not implicate the appellant) to the effect that the appellant did not take any part in the robbery, will not, we think, support a finding by the trial court of a rational inference beyond a reasonable doubt or to a moral certainty that the appellant participated in the robbery. The blood upon the cast worn by the appellant was, of course, a suspicious circumstance, but it was insufficient to bolster the other State's evidence so as to support the needed rational inference, especially in view of the plausible explanation as to how it got there. We hold that the trial judge was clearly in error in

finding the appellant guilty on the record as it is presented to us.

In making this ruling, we fully realize the appellant's profligate past as it is disclosed by the testimony, but we feel like Chief Judge Marbury, when speaking for the Court in *Estep v. State,* 199 Md. 308, 314, 86 A. 2d 470: "No matter how sordid the case and how suspicious the circumstances, we cannot permit a person charged with crime to be convicted without evidence. The conjectures of the trial judge might be entirely correct * * *. Nevertheless, a conviction without proof cannot be sustained under the laws of this State. A man is innocent until he is proved guilty, and there must be evidence which leads to such a result."

Since the sole reason for reversal is the insufficiency of the evidence and this may be supplied by the State, we shall remand the case for a new trial.

*Judgment reversed and case remanded for a new trial.*