ALBERT GEORGE COLEMAN *v.* STATE OF
MARYLAND

[No. 233, September Term, 1967.]

*Decided June 17, 1968.*

The cause was submitted to MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

388

*James W. McAllister* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Barrett Freedlander, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Appellant was convicted on July 17, 1967 in the Criminal Court of Baltimore by Judge Joseph L. Carter, sitting without a jury, under three separate indictments charging (1) unauthorized use of an automobile, (2) storehouse breaking, and (3) common law assault. He was sentenced to serve a term of ten years on the assault offense and two years each on the unauthorized use and storehouse breaking charges, to run concurrently with the assault term. The only question presented on this appeal is whether the evidence was sufficient to support appellant's conviction for common-law assault.

There was evidence adduced at the trial which showed that the assault victim Bedellia McNeal, a fifty-three year old grandmother, was under the influence of alcohol when she left her daughter's home at 5:00 p.m. on December 8, 1966. Shortly thereafter, the victim's daughter was advised that her mother had been taken to Johns Hopkins Hospital in a badly beaten condition.

The victim testified that she was unable to recall any of the events surrounding the assault since she had been "kind of intoxicated" on the day of the crime. The evidence showed that as a result of the beating, Mrs. McNeal's left eye was "hanging" from its socket and ultimately had to be removed; that she also sustained damage to her right eye, was bruised about the face and head, suffered internal bleeding and some broken ribs.

Officer Robert Rubin of the Baltimore City Police Department testified that at 6:20 p.m. on December 8, 1966, he responded to a call where he observed Mrs. McNeal in an unconscious condition, lying nude in the alley which ran alongside of 1403 East Madison Street, this being the address where the

victim resided. Rubin testified that Mrs. McNeal was bleeding from the face and head and her clothing had been ripped and strewn about the area.

Randolph Crouell, a nine year old fourth grade school boy, was the State's principal witness. He testified that it was dark on December 8, 1966 when he and his friend Keith Brown saw three boys approach a lady who was sitting in the front of a house on Madison Street; that one of the boys asked her for a match, and after the lady said she didn't have a match, "the boy drug her in the alley," at which time "one boy was lighting a cigarette and another boy had a flashlight and he put it up on the side of a little pipe and then went behind the little wall, and me and the boy named Keith, we seen the boys beating the woman." The witness further testified that it was "a boy in a blue coat, and another boy" who dragged the lady into the alley; that neither of these boys was the appellant; that he knew the appellant as Sonny; that the appellant was present when the boys approached the victim but he "didn't do nothing, but he was standing there"; that when "the boy in the blue coat" dragged the victim into the alley, appellant "was lighting a cigarette in the alley, and he had a flashlight in his hand"; and that appellant put the flashlight "up in the top of a pipe," which was "on top of the wall." The witness further testified that he made these observations by the light of the flashlight and from "behind the wall" and that he, presumably referring to the appellant and his flashlight, was "shining it down."

The witness Crouell did not specifically state during his testimony that he saw the appellant beat the victim, nor was he asked to identify the victim as Mrs. McNeal. During the course of his testimony on direct examination, the State claimed to have been surprised by Crouell's testimony and an unreported bench conference then ensued. It cannot, however, be gleaned from the record just how or by what testimony of the witness the State was surprised. Appellant did not cross-examine Crouell.

Keith Brown, also nine years of age and in the third grade, was then called as a witness by the State. He testified that he was with Randolph Crouell "behind the wall," in the alley, in the night, and saw appellant kick a lady and remove her cloth-

ing. At variance with this testimony, the witness thereafter stated that he didn't see the appellant on the night of the crime, but recognized him from his "deep voice," despite the fact that he had not known appellant previously and that appellant said nothing on the night of the offense. The witness further testified that Randolph Crouell told him what the appellant had done, but that he personally observed the appellant take the clothing off the lady. He was not asked to, nor did he, identify Mrs. McNeal as the victim of the assault.

There was evidence showing that some three months after the crime appellant was interrogated by police, apparently with reference to the assault on Mrs. McNeal, at which time he orally admitted that he was "in the alley" but that "I didn't do nothing"; that "I was smoking a cigarette."

The sixteen year old appellant did not testify on his own behalf. The trial judge, in finding appellant guilty of assault, stated that he did so without consideration of the testimony of Keith Brown.

It is well settled that the presence of the accused at the immediate and exact spot where a crime is in the process of being committed is a very important element that may be considered in determining guilt. *Johnson v. State,* 227 Md. 159; *Tasco v. State,* 223 Md. 503; *Spencer v. State,* 1 Md. App. 264. Equally well settled is the proposition that such presence, standing alone, is insufficient to establish participation in the perpetration of the crime. *Watson v. State,* 208 Md. 210; *Williams v. State,* 3 Md. App. 58; *Willis v. State,* 2 Md. App. 662; *Neil v. State,* 2 Md. App. 659; *Pettis v. State,* 2 Md. App. 651. And the fact that a person witnesses a crime and makes no objection to its commission, and does not notify the police, does not, of itself, make that person a participant in the crime. *Watson v. State, supra; Boone v. State,* 2 Md. App. 80. On the other hand, the trier of fact is entitled to take into consideration all the attendant circumstances surrounding the presence of the accused at the scene of the crime in making his determination of guilt or innocence. *Chavis v. State,* 3 Md. App. 179.

As the crime of assault is a common-law misdemeanor in Maryland, and as all participants therein are chargeable as

principals, *Coleman v. State,* 209 Md. 379, *Watson v. State, supra,* the question before us is whether there was any legally sufficient evidence showing that appellant participated in the crime, *i.e.,* that he knowingly, voluntarily, and with common criminal intent with the other participants assaulted Mrs. McNeal or that he advocated, encouraged, aided or abetted in the commission of the crime. See *Anello v. State,* 201 Md. 164; *Agresti v. State,* 2 Md. App. 278. To be an "aider" a person must assist, support or supplement the efforts of another; to be an "abettor" a person must instigate, advise or encourage the commission of a crime and may in some circumstances include a person who is present at the commission of the crime without giving active assistance. *Coleman v. State, supra; Seward v. State,* 208 Md. 341; *Anello v. State, supra.*

In every criminal case, evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be established, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. *Vincent v. State,* 220 Md. 232; *Cobb v. State,* 2 Md. App. 230. Since the instant case was tried by the court sitting without a jury, we may review the case upon both the law and the evidence, but cannot set aside the judgment of the lower court on the evidence unless clearly erroneous, giving due regard to the opportunity of the lower court to judge the credibility of the witnesses. Maryland Rule 1086. We do not, therefore, determine whether the defendant was guilty beyond a reasonable doubt; our function is to determine whether there was any evidence, or proper inferences from the evidence, upon which the trial court could find the defendant guilty beyond a reasonable doubt, and if the record shows such evidence, or proper inferences, we cannot find that the decision was clearly erroneous. *Abney v. State,* 244 Md. 444; *Spencer v. State, supra.*

On the record before us, we think there was legally sufficient evidence before the trial court from which it could properly conclude that the appellant was in the alley during the assault on Mrs. McNeal. From the testimony of Randolph Crouell, we think the trial judge could properly find that ap-

pellant was with the boys who approached Mrs. McNeal as she sat in front of her house; and that while there is no evidence to show that appellant physically assisted in dragging the victim into the alley, there was evidence showing that he was not only at the exact spot where the savage and brutal assault immediately thereafter occurred, but that he had a flashlight in his possession which he utilized in such manner as to provide better illumination for the perpetration of the crime. The fact that just prior to the crime appellant was with those persons who actually dragged the victim into the alley indicates a degree of identification and companionship with such persons from which, in light of appellant's subsequent actions, it may properly be inferred that he shared a common criminal intent with the others to assault the victim. Indeed, at the least, his proximity to the scene of the crime during its occurrence, and his ability to be of assistance to the other perpetrators of the offense, if necessary, either as a lookout or to prevent interference, lends meaning to and provides a rational reason for his continuing presence during the assault. See *McEntire v. State,* 2 Md. App. 449; *Sanders v. State,* 1 Md. App. 630. While the testimony of Randolph Crouell, the State's principal witness, leaves much to be desired, and the record does not demonstrate with any degree of clarity as to how Crouell observed the crime from "behind the wall," we nevertheless cannot say on the basis of all of the evidence that the trial judge was clearly in error in finding that the appellant was a participant in the crime. In so concluding, we have not considered Crouell's testimony that he saw "the boys" beating the victim as specifically including the appellant as one of the boys, nor have we considered the testimony of Keith Brown to have any probative value.

Finding no error in the assault conviction, and no question being raised as to the sufficiency of the evidence to support the unauthorized use and storehouse breaking convictions, the judgments must be affirmed.

*Judgments affirmed.*