## ANDRE VAN LEAR FOSTER *v.* STATE OF MARYLAND

[No. 167, September Term, 1970.]

*Decided January 25, 1971.*

---

6. Although introduced as an exhibit at trial, the gun was **not** included as part of the record on appeal.

42

The cause was argued before MURPHY, C.J., and ANDERSON and MORTON, JJ.

*Karl H. Goodman,* with whom was *Jack Rubin* on the brief, for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph B. Harlan* and *Peter D. Ward, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant Foster was jointly indicted with William Frazier, Charles Harrison, and Herbert Simms for conspiring to murder and murdering Elsie Johnson on May 28, 1969. Frazier and Harrison were additionally jointly indicted as accessories before and after the fact to the murder. The case against appellant, Harrison, and Frazier was called for trial on February 2, 1970. Frazier's motion for a severance was granted. Appellant and Harrison were then jointly tried before a jury. At the conclusion of the trial, Harrison was acquitted of all charges. Appellant was found guilty of murder in the first degree

without capital punishment. On appeal, he contends that the court erred in its instructions to the jury concerning the accomplice testimony rule.

The evidence at trial showed that Miss Johnson was shot four times at close range in Leakin Park; her body was found in the brush near the side of the road in the park. The State's principal witnesses were Vernice Smoot and Herbert Simms, both of whom were present at the scene of the crime and eyewitnesses to the shooting.

Smoot testified that appellant was the godfather of her child; that on occasions, he gave her money for her child; and that he called her on May 27, 1969, telling her that he had some money for the child which he had recently stolen. Smoot went to appellant's house with Frazier and Simms, in Frazier's car, but the appellant did not have the money at that time. Smoot testified that she eventually went to sleep in Frazier's car; that she awoke at 2:30 a.m. in Leakin Park when she heard a girl scream; that appellant and Harrison were standing outside the car with the girl; and that Frazier told appellant to shoot the girl in the head, after which appellant shot her four times. Smoot testified that Frazier was in the driver's seat at the time of the shooting; that Simms was in the back seat with her, and did not participate in the crime; and that when appellant re-entered the car, she snatched the gun from him. According to Smoot's testimony, Harrison protested the shooting and had tears in his eyes; after the shooting he carried the victim into the brush alongside the road. Smoot testified that appellant and the victim had been going together; and that on the day before the murder, appellant had told her (Smoot) that the victim had told the police where he (appellant) was staying. Smoot testified that she was afraid of appellant; that after the crime he had said he would kill her if she told; but that she nevertheless called the police, and they eventually questioned her. Smoot admitted that several days after the crime, she went to an amusement park with the appellant. She also testified that appellant told her mother

44

that she (Smoot) had shot the girl, a statement he later retracted.

Simms testified for the State, and confirmed Smoot's testimony that he and Frazier had driven her to appellant's house, in Frazier's car, on May 27. He testified that he and Frazier were good friends; that Frazier had a gun in his car under the dashboard; that on the night of the 27th he was in the car with appellant, another man, Smoot, and Frazier; that appellant asked Frazier for the gun; and that he (Simms) gave it to appellant after taking it from beneath the dashboard. Simms testified that the victim got in the car with them on the night of the murder, and they drove to the park, the conversation on the way being entirely normal; that Smoot was asleep in the car; that appellant told Frazier to stop the car, after which appellant, Harrison, and the victim got out; and that appellant yelled at the victim and shot her a number of times. Simms said that Frazier took the gun from appellant. He later testified that it was he who grabbed the gun from appellant, emptied it, and returned it to Frazier. Simms testified that he did not observe Harrison crying or attempting to aid the victim. Two weeks after the crime, Simms heard the police were looking for him and surrendered himself. He testified that he did not know the victim; that he had been drinking on the night of the offense; that he did not immediately report the crime to the police because he was afraid of the appellant; and that he had nothing whatsoever to do with the crime.

The State adduced evidence showing that the gun used to murder Miss Johnson belonged to Frazier. It was seized under search warrant from Frazier's house on June 5, 1969.

Denise Allen, a sister of the appellant, testified on his behalf that on May 27—shortly before the crime—she was with Smoot, Frazier, and Simms in Frazier's car; that Smoot saw the victim sitting on some steps, pointed to her and said "I would kill that bitch." Miss Allen testified that appellant and the victim had been going to-

gether; that on the night the crime was committed appellant had been to a party; that the victim was also at a party with Frazier and Harrison, and left at 2:00 a.m.

Appellant's defense at trial was that both Simms and Smoot were accomplices upon whose uncorroborated testimony he could not properly be convicted. In furtherance of this defense, he sought appropriate jury instructions. In the course of instructing the jury the trial judge said:

> "The defendant, Foster, as I comprehend the argument, contends that one of the witnesses, at least Mr. Simms, was an accomplice. I heard no testimony from Simms' lips or from that of the other eye witness, Vernice Smoot, to support the statement that either one was an accomplice. But, as you know, the State has indicted Mr. Simms as a co-defendant in this murder case. And if you should conclude that he was an accomplice for any reason, then let me instruct you as to the effect of his testimony, a person accused of a crime can not be convicted by the uncorroborated testimony of an accomplice. Although only slight corroboration is necessary, the corroborating testimony must tend either to show 1, the identity of the defendant in the perpetration of the crime; and, 2, the defendant's participation in the crime itself."

Appellant specifically objected to this instruction on the ground that it was improper for the court to tell the jury that there was no evidence that either Smoot or Simms were accomplices. Appellant claimed that his entire defense was prejudiced by the court's statement, and he moved for a mistrial or a corrective instruction. Both were denied, and from the colloquy that ensued between the court and counsel, the court made it plain that it believed that there was no evidence that either witness was an accomplice. Appellant's displeasure with the court's action is altogether clear in the record.

An accomplice is one who knowingly, voluntarily, and with common criminal intent with the principal offender unites with him in the commission of the crime, either as a principal or as an accessory before the fact, *Watson v. State,* 208 Md. 210, and this definition encompasses advocating, encouraging, aiding or abetting the commission of the crime, *Coleman v. State,* 4 Md. App. 386. To be an "aider," a person must assist, support or supplement the efforts of another; to be an "abettor," a person must instigate, advise or encourage the commission of a crime and may in some circumstances include a person who is present at the commission of the crime without giving active assistance. *Coleman v. State,* 209 Md. 379; *Seward v. State,* 208 Md. 341; *Anello v. State,* 201 Md. 164. While the generally accepted test as to whether a witness is an accomplice is whether he himself could be convicted for the offense, either as a principal or accessory before the fact, *Sutton v. State,* 10 Md. App. 353, the test has otherwise been stated in terms of whether the witness could be indicted and/or punished for the crime charged against the defendant, *Watson v. State, supra.* See also *Burley v. State,* 5 Md. App. 469, footnote 2 at page 472. We have held repeatedly that when evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions. *Christopher v. State,* 9 Md. App. 277; *Gaskins v. State,* 7 Md. App. 99; *Burley v. State, supra.*

It is true, of course, that presence at the scene of the crime without more is insufficient to establish participation in the perpetration of the crime. *Johnson v. State,* 227 Md. 159; *Spencer v. State,* 1 Md. App. 264. And the mere fact that a person witnesses a crime and makes no objection to its commission, and does not notify the police, does not make him a participant in the crime. *Watson v. State, supra; Coleman v. State,* 4 Md. App. 386. But presence at the immediate and exact spot where a

crime is committed is an important element that may be considered in determining guilt, and we think the trier of fact is entitled to take into consideration all the attendant circumstances surrounding the presence of a witness at the crime scene in determining whether the witness is an accomplice. *See Tasco v. State*, 223 Md. 503; *Coleman v. State*, 4 Md. App. 386; *Chavis v. State*, 3 Md. App. 179. That a witness, alleged to be an accomplice, testifies to facts exculpating himself from any connection with or involvement in the crime does not mean that the jury is obliged to believe him. His relation to the crime is a question for determination by the jury where there is evidence, or rational inferences from evidence, from which the jury could properly conclude that the witness was an accomplice. *See Christopher v. State, supra; Burley v. State, supra.*

As heretofore indicated, there was evidence that shortly before the crime was committed, Smoot, in the presence of Simms and Frazier, said that Miss Johnson should be killed. She was friendly with the appellant, received money from him, and had been told by him that the victim had informed the police where appellant was staying. She spent considerable time just prior to the murder in the company of Frazier who, according to her testimony, urged appellant to murder the victim. Smoot was present at the scene of the crime, witnessed the murder, handled the gun, spent time with appellant after the crime, and was accused by appellant of having committed the crime herself. Against such an evidentiary background, we think the jury could have concluded that Smoot was not an innocent onlooker at a cold blooded execution but was an accomplice.

Simms, under indictment for the murder, was with Smoot and Frazier immediately prior to the crime. There was evidence that he was present when Smoot pointed out Miss Johnson and said she should be killed. He handled the murder weapon, both before and after the crime. He acknowledged his close acquaintance with Frazier who, according to Smoot, exhorted appellant in his

presence to kill Miss Johnson. His presence at the scene of the crime under the circumstances constituted evidence from which the jury could have properly inferred that he was an accomplice. While Simms's testimony exculpated Smoot and Smoot's testimony exculpated Simms, we think the evidence of their joint or separate involvement in the crime was capable of being determined either way, and, as such, was a matter properly to be submitted to the jury with proper instructions. When the trial judge communicated his belief to the jury that there was no evidence that either Smoot or Simms was an accomplice, appellant's defense was severely compromised. Needless to say, a statement or instruction by the trial judge to the jury carries with it the imprimatur of a judge learned in the law and usually has great force. *Hardison v. State,* 226 Md. 53, 62. As that case points out, it is proper for jurors to look to a judge who is clothed with the presumption of impartiality to instruct them in an advisory manner as to what is the law of the State in relation to the case before them. On the facts of this case, we hold that the trial court's instructions were prejudicially erroneous and were not cured by advising the jury, in effect, that notwithstanding his view of the matter, the question was solely for their determination.

*Judgment reversed; case remanded for a new trial.*