## STATE OF MARYLAND *v.* FOSTER

[No. 63, September Term, 1971.]

*Decided November 11, 1971.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edward F. Borgerding, Assistant Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellant.

*Jack B. Rubin* and *Karl H. Goodman* for appellee.

DIGGES, J., delivered the opinion of the Court.

Andre Van Lear Foster (the defendant) along with Charles Harrison, William Frazier and Herbert Simms, was indicted in the Criminal Court of Baltimore for conspiring to murder and murdering Elsie Johnson, a sixteen year old girl, in the early morning hours of May 28, 1969. With Judge J. Gilbert Prendergast presiding, the case was called for trial against only Harrison and

Foster because the State had elected not to proceed against Simms at that time, and Frazier had been granted a severance.[1] At trial Harrison was acquitted of all charges but the jury found Foster guilty of murder in the first degree without capital punishment.

Following this, Foster appealed to the Court of Special Appeals where his conviction was reversed and the case remanded for a new trial. In arriving at its decision, the court reasoned that the trial judge had prejudiced the defendant by improperly commenting on the evidence in his advisory instructions to the jury. *Foster v. State*, 11 Md. App. 40, 48, 272 A. 2d 810 (1971). We granted the State's petition for a writ of certiorari.

The State's case was principally based upon the testimony of Vernice Smoot and Herbert Simms, the only eyewitnesses to the crime called by either party. Miss Smoot testified that the defendant, the godfather of her daughter, Rayel, periodically gave her money and gifts for the benefit of the child. On May 27, 1969 Foster told Smoot that he had recently "snatched" some money and asked her to come to his home in East Baltimore so he could send part of it to his godchild. The witness then stated that as she was leaving her home she saw two of her neighbors, Frazier and Simms, and asked them to drive her to Foster's house. They used Frazier's car but the excursion proved futile for when they arrived at the defendant's home, Foster announced he did not yet have the money and suggested they come back later that evening. Upon their return when informed there would be still a further delay they decided to wait. Miss Smoot then got in the back seat of the car and went to sleep, while Frazier and Simms stopped at a local bar. The witness testified that she was asleep for several hours and remembers nothing prior to being suddenly awakened in Baltimore City's Leakin Park by the screams of a girl and sounds similar to "firecrackers." At that instant she noticed Frazier in the front seat of the car,

---

1. Harrison, Frazier and Simms were additionally indicted as accessories before and after the fact.

Simms in the back beside her, while Foster was outside, a short distance away, "standing over the girl, shooting." She also recollects seeing another person, Harrison, standing near the defendant tearfully pleading with him not to kill Elsie Johnson. Miss Smoot then related that when Foster got back in the car he threatened to kill anyone who talked about the incident; yet in spite of this admonition she eventually contacted the police. In addition, this witness also supplied a possible motive for the crime when she testified that the defendant had told her several days before the shooting that he was mad at the victim for putting the police on his trail. Miss Smoot disclaimed any prior knowledge of or participation in the crime by either Simms or herself.

Though under indictment, Simms was also a witness at the instance of the State and his testimony essentially confirmed what Miss Smoot said. In addition, he described the sequence of events that occurred during her respite. He said that on the night of May 27th, Frazier, Foster, Harrison and himself had a conversation about "guns or lethal weapons." Following this discussion the defendant asked to see Frazier's gun and at the owner's direction Simms got the pistol from beneath the dashboard and handed it to Foster. When requested to return the weapon, Foster refused and instead asked to be "dropped off" at a nearby house. There, with the gun still in his possession, he left the car and when he returned, twenty minutes later, he was accompanied by Elsie Johnson, a stranger to Simms. Frazier again asked for his pistol but the defendant said "wait" and told him to drive through Leakin Park. While driving in the park the defendant saw a clearing and shouted to Frazier "stop the car," at which time Foster, Harrison and Miss Johnson got out. Moments later Foster yelled something partially inaudible at the girl to the effect that "this is for" and started firing at her.

The first issue we will consider is whether Judge Prendergast erred when he denied Foster's motion for a judgment of acquittal. Both parties agree that under the law

of this State, a defendant cannot be convicted on the uncorroborated testimony of an accomplice. *Watson v. State,* 208 Md. 210, 217, 117 A. 2d 549 (1955). Using this as a foundation, the defendant contends that his conviction was improper and the motion should have been granted, since the record clearly indicated that both Smoot and Simms were accomplices and the State presented no corroborative evidence sufficient to find him guilty. We disagree with this argument, as did the trial court and the Court of Special Appeals. Chief Judge Murphy, for the Court of Special Appeals, in discussing the pertinent law on accomplices, succinctly and correctly said:

> "An accomplice is one who knowingly, voluntarily, and with common criminal intent with the principal offender unites with him in the commission of the crime, either as a principal or as an accessory before the fact, *Watson v. State,* 208 Md. 210, and this definition encompasses advocating, encouraging, aiding or abetting the commission of the crime, *Coleman v. State,* 4 Md. App. 386. To be an 'aider,' a person must assist, support or supplement the efforts of another; to be an 'abettor,' a person must instigate, advise or encourage the commission of a crime and may in some circumstances include a person who is present at the commission of the crime without giving active assistance. *Coleman v. State,* 209 Md. 379; *Seward v. State,* 208 Md. 341; *Anello v. State,* 201 Md. 164. While the generally accepted test as to whether a witness is an accomplice is whether he himself could be convicted for the offense, either as a principal or accessory before the fact, *Sutton v. State,* 10 Md. App. 353, the test has otherwise been stated in terms of whether the witness could be indicted and/or punished for the crime charged against the defendant, *Watson v. State, supra.* See also *Burley v. State,* 5 Md. App. 469, footnote 2 at page 472. We have

held repeatedly that when evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions. *Christopher v. State,* 9 Md. App. 277; *Gaskins v. State,* 7 Md. App. 99; *Burley v. State, supra.*

It is true, of course, that presence at the scene of the crime without more is insufficient to establish participation in the perpetration of the crime. *Johnson v. State,* 227 Md. 159; *Spencer v. State,* 1 Md. App. 264. And the mere fact that a person witnesses a crime and makes no objection to its commission, and does not notify the police, does not make him a participant in the crime. *Watson v. State, supra; Coleman v. State,* 4 Md. App. 386. But presence at the immediate and exact spot where a crime is committed is an important element that may be considered in determining guilt, and we think the trier of fact is entitled to take into consideration all the attendant circumstances surrounding the presence of a witness at the crime scene in determining whether the witness is an accomplice. *See Tasco v. State,* 223 Md. 503; *Coleman v. State,* 4 Md. App. 386; *Chavis v. State,* 3 Md. App. 179. That a witness, alleged to be an accomplice, testifies to facts exculpating himself from any connection with or involvement in the crime does not mean that the jury is obliged to believe him. His relation to the crime is a question for determination by the jury where there is evidence, or rational inferences from evidence, from which the jury could properly conclude that the witness was an accomplice. *See Christopher v. State, supra; Burley v. State, supra."* 11 Md. App. at 46-47.

The Court of Special Appeals then enumerated specific evidence and from it determined the jury could conclude that either Smoot or Simms, or both, were "not innocent onlooker[s] at a cold blooded execution," but rather they were accomplices. 11 Md. App. at 47. Without embracing the accuracy of this conclusion, we will assume *arguendo* it is correct. However, even with such a concession, the defendant is still only entitled to submission of this issue to the jury for determination. And, utilizing the testimony of Simms which "exculpated Smoot and Smoot's testimony [which] exculpated Simms," the jury could conversely decide that either or both, were not accomplices. Therefore, the trial judge was correct in denying the defendant's motion for judgment of acquittal.

The defendant next argues that the trial judge in instructing the jury made a prejudicial statement which should have compelled the granting of his motion for a mistrial. This occurred when Judge Prendergast advised the jury:

> "The defendant, Foster, as I comprehend the argument, contends that one of the witnesses, at least Mr. Simms, was an accomplice. *I heard no testimony from Simms' lips or from that of the other eye witness, Vernice Smoot, to support the statement that either one was an accomplice.* But, as you know, the State has indicted Mr. Simms as a co-defendant in this murder case. And if you should conclude that he was an accomplice for any reason, then let me instruct you as to the effect of his testimony, a person accused of a crime cannot be convicted by the uncorroborated testimony of an accomplice. Although only slight corroboration is necessary, the corroborating testimony must tend either to show 1, the identity of the defendant in the perpetration of the crime; and, 2, the defendant's participation in the crime itself." (Emphasis added.)

The Court of Special Appeals accepted Foster's argument in ascertaining that his defense was severely compromised "[w]hen the trial judge communicated his belief to the jury that *there was no evidence* that either Smoot or Simms was an accomplice." (Emphasis added.) 11 Md. App. at 48. We disagree with this analysis. Judge Prendergast did not say, or suggest, that either Simms or Smoot was not an accomplice; he merely commented that he heard *no testimony from their lips* to indicate they were accomplices. We have meticulously reviewed the record here and find no testimony from their *lips* which would render this portion of the trial judge's instruction inaccurate. Furthermore, this comment did not effectively remove the issue of whether these two witnesses were accomplices from the jury's consideration. In the very next sentence of his instructions Judge Prendergast stated:

> "if you should conclude that he was an accomplice for any reason, then let me instruct you as to the effect of his testimony . . . ."

Again, later he explicitly told the jury:

> "*should you determine that a witness for the State, is in fact, an accomplice* in the commission of the crime, then, that testimony of the witness would have to be corroborated by other testimony in order to sustain a conviction." (Emphasis added.)

These comments clearly left the jury's function of determining the law and facts undisturbed. In addition, the trial judge frequently cautioned that his instructions were merely advisory and the jury was at liberty to reject them. He said:

> "In the course of the charge I may refer to some of the facts, or state my recollection of them, any such reference is intended only to point up the issues in the case and is at the most

advisory and certainly not binding on you. Further, the fact that I may comment upon the evidence, or may have questioned some of the witnesses, is not to be taken by you as any indication or feeling on my part as to the truth or falsity of such evidence, or the weight or effect thereof, and should not influence you in reaching your verdicts."

In this case, the defendant has simply extracted one brief sentence from the judge's entire instructions, misconstrued its content and based a claim for reversible error squarely upon it. It is a well established rule that when objection is raised to a court's instruction, attention should not be focused on a particular portion lifted out of context, but rather its adequacy is determined by viewing it as a whole. *Alston v. Forsythe* (and cases cited therein) 226 Md. 121, 135, 172 A. 2d 474 (1961) ; *Christ v. Wempe,* 219 Md. 627, 639, 150 A. 2d 918 (1959) ; *Reindollar v. Kaiser,* 195 Md. 314, 319-20, 73 A. 2d 493 (1950) ; *Shotkosky v. State,* 8 Md. App. 492, 508, 261 A. 2d 171 (1970) ; *Graef v. State,* 1 Md. App. 161, 171, 228 A. 2d 480 (1967). We, therefore, conclude that the trial court committed no reversible error.

> *Order of the Court of Special Appeals reversed; judgment and sentence of the Criminal Court of Baltimore reinstated.*