# HERCULES WILLIAMS *v.* STATE OF MARYLAND

[No. 195, September Term, 1973.]

*Decided January 3, 1974.*

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

*Joseph H. Thomas, Jr.*, for appellant.

*Gilbert Rosenthal, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City, Dominic Iamele, J. Carroll Holzer* and *Howard B. Gersh, Assistant State's Attorneys for Baltimore City*, on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

On July 27, 1972 Alonzo Alston "died of a combination of shotgun and gunshot wounds to the head." He had been shot to death in the living room of his home at 5100 Queensberry Avenue after opening his front door to admit two men. The appellant and two others, Eugene Allen and Jerome Benjamin MacArthur, jointly were indicted for the first degree murder of Alston. The appellant and three others, Eugene Allen, Jerome Benjamin MacArthur and Maurice Wilkerson, jointly were indicted for conspiracy to murder Alston.

The appellant Hercules Williams, separately tried before a jury in the Criminal Court of Baltimore, was convicted of murder in the first degree and of conspiracy to murder. Consecutive life sentences were imposed for the offenses.

Appellant suggests the following errors by the trial court that require reversal:

1. Compelling sequestration of the jury during the six day trial.
2. Permitting the witness Spencer to testify.
3. Permitting the witness MacArthur to testify.
4. Refusal to grant appellant's motion for judgment of acquittal.
5. Granting State's motion to depose the witness Mills also known as Toles.

### 1. *Sequestration of the Jury*

Appellant contends, we think without just cause, that sequestration of the jury during the six-day trial was in violation of his constitutional rights under the Fifth and Sixth Amendments of the Constitution of the United States. He has referred us to no case supporting such view and we have found none.

It seems clear that under the common law, sequestration of the jury was required. See Note 21 A.L.R.2d 1088, et seq. In any event Article 51, § 22 is dispositive here. That section reads as follows:

"The jurors sworn to try a criminal action may,

at any time before the submission of the case to the jury, in the discretion of the court, be permitted to separate or may be kept in charge of proper officers."

No abuse of discretion has been shown here.

## 2. *The Spencer Testimony*

Prior to the commencement of trial, all witnesses were excluded from the courtroom pursuant to Rule 753. In the course of the cross-examination of the witness Spencer, it was developed that Spencer had gone over his own prior statement with one of the Assistant State's Attorneys just before he began his testimony at the trial. Immediately, defense counsel said: "* * * I am going to move to strike all of this man's testimony and the Jury be instructed to disregard his entire testimony, and my reason is that the witnesses were sequestered."

Further proceedings before the jury were suspended and testimony was taken out of their presence as to the nature of the communication between the witness and counsel for the State. At the conclusion of that testimony the trial court said:

"It is uncontradicted from the testimony of this witness and the proffer by the State there was no discussion whatsoever between this witness and anyone, including the State's Attorney, as to any of the witnesses or what they said. On the contrary, it was simply the action of the State's Attorney saying are you still going to testify. The answer is yes. Here is your statement. I read you the question and I read you the answer. Is that the truth, and the witness says yes, it is the truth. Not one word concerning what some other witness said."

Upon that finding of fact the trial court denied the motion, relying upon *Conway v. State*, 15 Md. App. 198, *cert. den.* 266 Md. 735, 289 A. 2d 862. We agree that *Conway* is controlling. There, under facts strikingly similar to the subject case, we held that Rule 753 did not prevent

communications relating exclusively to prior statements of the witness himself. We pointed out at page 216 [872]:

> "The primary purpose of the Rule is to prevent prejudice and to insure against, insofar as possible, one prospective witness from being taught, schooled or prompted by hearing another witness' testimony."

### 3. *MacArthur as a Witness*

Appellant sought to prohibit use of one Jerome B. MacArthur as a witness for the State. The trial judge refused to do so. For clear understanding of the motion and the ruling rejecting it, a somewhat extended explanation of the circumstances and conditions surrounding the prior taking of the deposition of another witness is required.

On October 12, 1972 the State had filed in the Criminal Court of Baltimore a document titled "State of Maryland v. Hercules Williams, Jr., et al." In the form of a motion to take the deposition of M's Castile Mills also known as Toles, the State alleged in substance the following: that Alonzo Austin [sic] had been murdered; that the perpetrators of the crime may have been Hercules Williams, Jr. and Eugene Allen; that Castile Mills also known as Toles had furnished information to police relating to the homicide of Alonzo Austin [sic] and to the escape of Eugene Allen from a place of lawful confinement; that Mills was a necessary and material witness to those offenses who believed "that her life and the lives of her children will be under constant threat during the time that Hercules Williams, Jr. is awaiting trial"; that two days previously, the nine year old son of the proposed deponent had been chased into the house by a man who had demanded entry, saying that "he was there to kill somebody and wasn't going to leave until he did"; that it was the belief of the State that the life of Mills was in great danger because she had become a witness for the State; that the threat to her safety would be removed if it was known that her testimony by way of deposition could be used at a trial if she was not then available as a witness. The motion then recited that counsel for Hercules Williams

and for James [sic] MacArthur had been advised and waived notice of the taking of deposition under Rule 727 c and further agreed that the "taking of the deposition on the 12th day of October is reasonable under the circumstances." Written stipulations to such effect were executed by Hercules Williams and Jerome MacArthur.

Attached to and incorporated within the motion by reference, was an affidavit (previously filed in another case) by Arrie W. Davis, Esquire, former Assistant State's Attorney, alleging that Hercules Williams had harmed or threatened to harm witnesses in that other case.

No indictment had been found against either Hercules Williams or Jerome B. MacArthur at the time the deposition was to be taken, although presentments as to each for murder and conspiracy to murder then had been signed by the Grand Jury foreman.

On October 12, 1972 the deposition of the witness was taken. Present were Messrs. Leslie Gladstone, Howard Gersh and Dominic Iamele for the State; Hercules Williams, with Joseph H. Thomas, Jr., Esq., as attorney in his behalf; and Jerome B. MacArthur, with William H. Murphy, Jr., Esq., as attorney in his behalf.

Prior to the commencement of the deposition counsel for Williams said:

> "We are having a discussion I think the Court should be apprised of. It's one concerning sequestration and the point of the defense being that any person who might later be called as a witness by the State or by the defense in the trial of this matter, be it police officer or not, not be allowed to remain. I think that we would have a right to sequestration under the rules."

Such was the background when the State called Jerome B. MacArthur as a witness at the substantive trial.

The appellant contends that the attendance of MacArthur during the course of the deposition of the witness was in violation of his requested sequestration of witnesses; that the testimony of MacArthur indelibly was influenced by the fact

of his attendance; and that extreme prejudice to the appellant had resulted therefrom. The State's position was and is that Rule 727 b authorized, and constitutional due process compelled, the attendance of MacArthur, because he was a co-defendant. Rule 727 in appropriate part reads as follows:

> "b. *Presence of Accused.*
> If a deposition is taken at the instance of the State, the accused shall have the right to be present at the taking thereof and if in custody, shall be produced at the examination and kept in the presence of the witness during the examination by the officer having the defendant in custody, * * *."

The State points out that the deposition could not otherwise have been used against MacArthur if such use became permissible under sub-section e of the rule. (See *Collins v. State,* 12 Md. App. 239, 278 A. 2d 311.) The State consistently has maintained that when the deposition was taken it was not known that MacArthur would not be prosecuted, nor was it then known that he would be used as a State's witness in the prosecution of Williams.

In a second string to its bow, the State also contends that even if the attendance of MacArthur at the deposition was in violation of Rule 753, (relating to the exclusion of witnesses) his testimony would not be prohibited because no prejudice to the defendant resulted from failure to observe the rule.

Out of the presence of the jury, the trial judge heard arguments of counsel and took the testimony of MacArthur before ruling upon the exclusion request. The trial judge thereafter made two determinations of fact. He said:

> "I would like to state for the record with respect to the denial of the motion to suppress this afternoon, I don't know if I made a finding of fact. If I didn't, I do say as a matter of fact, Mr. MacArthur's deal, bargain, agreement with the State, whatever you want to call it, was made subsequent to the deposition."

There was substantial evidence tending to support the conclusions of the trial judge. He also said:

"Without question, a Court has discretion to determine the matter of sequestration and any violation thereof, and I concede discretion to mean not really a word Appellate Courts talk about, but an actual word I am required to do, and that is the reason I have gone into the matter.

I have been furnished cases by both sides. The purpose of the rule is to prevent a witness from hearing the testimony of some other witness so that they can arrange their testimony in such a way that it is what the Appellate decisions call harmony, that they prevent one witness from saying or even the other witness from hearing the testimony of such a nature that they smooth off the rough edges and adapt their testimony so it will be consistent. That is the evil the rule wants to guard against. While Mr. Thomas, who has done a beautiful job, almost had me convinced until the testimony of Mr. MacArthur. While he has a very good point, namely, that there is an appearance of prejudice, because his theory is that by hearing Castille Toles' testimony Mr. MacArthur would be fundamentally affected by that, and even if not fundamentally affected by it, would be to some extent affected by it. I am sitting here. I looked at him, listened to him, and I got a gut reaction, and that reaction is he would testify to the events that occurred if there had never been a deposition, if Castille Toles had never said a word. He challenged her assertion to certain geographical places.

I find there is no prejudice to Mr. Williams. If I felt there was prejudice, I would grant the Motion. I deny the Motion."

Appellant cites *Poliafico v. U. S.*, 237 F. 2d 97 as a case "directly on point" supporting his position. We do not so read *Poliafico*. It is true that the language used by the Circuit Court in its description of the action taken by the

District Court is obscure. However, the true import of that decision is quite clearly shown at page 114:

"In Carrado v. United States, 93 U.S.App.D.C. 183, 210 F.2d 712, the appealing parties likewise urged that they were damaged by the testimony of a defendant who, in the midst of the trial, was discharged, and thereafter testified for the government. The argument was advanced that such defendant had the advantage of hearing the testimony of the government witnesses before she testified, and that her counsel had, up to that time, participated in conferences with the counsel of the other defendants. The court, however, ruled that until the witness was discharged as a defendant, she was required to be in the courtroom, and that there was no error regardless of any speculative prejudice to the other defendants because of her presence."

We hold that MacArthur, as a co-defendant, was entitled to be present during the deposition of Mills and that circumstance did not prohibit his subsequent use as a witness for the State against Williams.

Moreover, there was substantial evidence to support the additional conclusion of the trial judge that no prejudice resulted to the appellant from the fact of MacArthur's attendance at the Mills deposition. We have made clear that the violation of Rule 753 does not constitute reversible error *per se*, but that the question whether testimony of a witness is barred by such violation is directed to the sound discretion of the trial judge. *Jones v. State*, 11 Md. App. 468, 481, 275 A. 2d 508, 514. We find no abuse of discretion here.

### 4. *Motion for Judgment of Acquittal*

Jerome B. MacArthur, a bus driver for the Mass Transit Administration, met Ophelia Hunter, a bus passenger, in January, 1972. Conversations between them, leading to greater familiarity, in turn led to discussions in February, 1972 that caused him to be "astonished what she wanted

done." MacArthur met Hercules Williams, the appellant, and informed him that Ophelia Hunter wanted somebody "knocked off." Williams replied "Well, if the money is right, you got the right guy. Tell her you found somebody."

The initial conversation between MacArthur and Williams, in March or April, 1972, was carried out on Ashland Avenue near Caroline Street. Williams said he "would do it for $1500.00." MacArthur reported to Ophelia Hunter, who made a counter offer to pay $1200.00. Williams agreed, saying "I'll get in contact with you later and I'll take care of the whole thing later. Don't worry about it." In June, Williams told MacArthur that he and another man "was going to take care of this thing."

On Thursday, July 27, 1972, MacArthur met Williams and one Eugene Allen. The latter two indicated that they wanted "to ride over in the MacArthur car," but that another car would follow to prevent involvement of MacArthur. An automobile operated by Nelson Ralph Spencer, with Maurice Wilkerson and M's Castile Mills also known as Toles, as passengers, followed the MacArthur vehicle. Both vehicles ultimately parked on Park Heights Avenue, one block from Garrison Boulevard. There MacArthur telephoned Ophelia Hunter. MacArthur then gave Williams and Allen an address on Queensberry Avenue where "this girl wants something done."

Williams and Allen thereupon left the MacArthur automobile and went to the other vehicle. MacArthur returned to East Baltimore. As he left Park Heights and Garrison, MacArthur noticed that Williams was carrying a shopping bag. MacArthur, Williams and Allen met again later in the evening.

At the latter meeting MacArthur gave Williams $600.00; Williams gave some money to Allen; and Allen gave some to the "fellow in the car." MacArthur had received the money from Ophelia Hunter about a week before. The balance of the money, to be paid "when the insurance money came through," was in fact paid about a month later by Ophelia Hunter.

Nelson Ralph Spencer testified that he had borrowed a 16"

sawed off shot gun from Allen on July 20, 1972 for use by Spencer in a robbery. He did not immediately return the weapon to Allen after the robbery, but kept it in the trunk of his car in a brown paper shopping bag. On July 27, 1972 he met Allen and Castile Toles on Greenmount Avenue. Allen asked if he would "take them somewhere." When Spencer agreed, Allen made a telephone call. Spencer then drove to East Baltimore, meeting Williams at that point. Spencer was told that he would be paid $100.00 to follow the vehicle in which the appellant and Allen would ride.

Allen and appellant thereupon entered a green automobile operated "by another dude" [MacArthur] and the two vehicle procession traveled to and parked on Park Heights Avenue near Garrison. Allen and appellant alighted from the lead car and came back to the Spencer vehicle. Allen was wearing a police special .38 caliber revolver; appellant was carrying the shopping bag containing the sawed-off shotgun that earlier had been returned by Spencer to Allen. MacArthur then drove back to East Baltimore.

Appellant and Allen entered the Spencer vehicle and were driven to and parked at an alley and garage about two blocks away. Appellant and Allen left the parked vehicle; Spencer, Wilkerson and M's Castile Mills also known as Toles, as Spencer heard two shots. Appellant and Allen returned to the vehicle about five minutes after they had left it. They "got down on the floor," the appellant saying "take your time." They left the scene about 10:30 p.m. Spencer said that he did not know what Williams and Allen had done or had planned to do.

That the evidence of MacArthur and Spencer is legally sufficient to convict appellant of murder and of conspiracy to murder is manifest, unless both witnesses were accomplices as a matter of law. Appellant contends that they were.

Maryland courts early and late have ruled that conviction cannot be had on the uncorroborated testimony of accomplices.[1] We recognize and adhere to that rule.

---

1. *Lanasa v. State*, 109 Md. 602, 71 A. 1058.
*Montgomery v. State*, 17 Md. App. 119, 300 A. 2d 218.

There can be no doubt that the evidence would compel the conclusion that MacArthur was an accomplice as a matter of law. There can be no doubt also that the evidence would *permit* the trier of facts to conclude that Spencer was an accomplice, but there is equally no doubt that such a conclusion is not compelled by the evidence. Under such circumstances the case of *State v. Foster*, 263 Md. 388, 283 A. 2d 411, is dispositive of this issue. In *Foster*, the Court of Appeals said at page 392, *et seq.* [413, et seq.]:

> "The first issue we will consider is whether Judge Prendergast erred when he denied Foster's motion for a judgment of acquittal. Both parties agree that under the law of this State, a defendant cannot be convicted on the uncorroborated testimony of an accomplice. *Watson v. State*, 208 Md. 210, 217, 117 A. 2d 549 (1955). Using this as a foundation, the defendant contends that his conviction was improper and the motion should have been granted, since the record clearly indicated that both Smoot and Simms were accomplices and the State presented no corroborative evidence sufficient to find him guilty. We disagree with this argument, as did the trial court and the Court of Special Appeals. Chief Judge Murphy, for the Court of Special Appeals, in discussing the pertinent law on accomplices, succinctly and correctly said:
>
> > 'An accomplice is one who knowingly, voluntarily, and with common criminal intent with the principal offender unites with him in the commission of the crime, either as a principal or as an accessory before the fact, *Watson v. State*, 208 Md. 210, and this definition encompasses advocating, encouraging, aiding or abetting the commission of the crime, *Coleman v. State*, 4 Md. App. 386. To be an "aider," a person must assist, support or supplement the efforts of another; to be an "abettor," a person must

instigate, advise or encourage the commission of a crime and may in some circumstances include a person who is present at the commission of the crime without giving active assistance. *Coleman v. State*, 209 Md. 379; *Seward v. State*, 208 Md. 341; *Anello v. State*, 201 Md. 164. While the generally accepted test as to whether a witness is an accomplice is whether he himself could be convicted for the offense, either as a principal or accessory before the fact, *Sutton v. State*, 10 Md. App. 353, the test has otherwise been stated in terms of whether the witness could be indicted and/or punished for the crime charged against the defendant, *Watson v. State, supra.* See also *Burley v. State*, 5 Md. App. 469, footnote 2 at page 472. We have held repeatedly that when evidence relating to whether a witness is an accomplice is capable of being determined either way and justifies different inferences in respect thereto, the question is for the determination of the trier of fact and in a jury case should be submitted to the jury with proper instructions. *Christopher v. State*, 9 Md. App. 277; *Gaskins v. State*, 7 Md. App. 99; *Burley v. State, supra.*

It is true, of course, that presence at the scene of the crime without more is insufficient to establish participation in the perpetration of the crime. *Johnson v. State*, 227 Md. 159; *Spencer v. State*, 1 Md. App. 264. And the mere fact that a person witnesses a crime and makes no objection to its commission, and does not notify the police, does not make him a participant in the crime. *Watson v. State, supra; Coleman v. State*, 4 Md. App. 386. But presence at the immediate and exact spot where a crime is committed is an important element that may be considered in determining guilt, and we think the trier of fact is entitled

to take into consideration all the attendant circumstances surrounding the presence of a witness at the crime scene in determining whether the witness is an accomplice. *See Tasco v. State,* 223 Md. 503; *Coleman v. State,* 4 Md. App. 386; *Chavis v. State,* 3 Md. App. 179. That a witness, alleged to be an accomplice, testifies to facts exculpating himself from any connection with or involvement in the crime does not mean that the jury is obliged to believe him. His relation to the crime is a question for determination by the jury where there is evidence, or rational inferences from evidence, from which the jury could properly conclude that the witness was an accomplice. *See Christopher v. State, supra; Burley v. State, supra.'* 11 Md. App. at 46-47.

The Court of Special Appeals then enumerated specific evidence and from it determined the jury could conclude that either Smoot or Simms, or both, were 'not innocent onlooker[s] at a cold blooded execution,' but rather they were accomplices. 11 Md. App. at 47. Without embracing the accuracy of this conclusion, we will assume *arguendo* it is correct. However, even with such a concession, the defendant is still only entitled to submission of this issue to the jury for determination. And, utilizing the testimony of Simms which 'exculpated Smoot and Smoot's testimony [which] exculpated Simms,' the jury could conversely decide that either or both, were not accomplices."

In the subject case the jury could find, as Spencer testified was the case, that he was unaware of any intent and purpose by Williams and Allen to kill Alston. In such event the jury could decide that Spencer was not an accomplice of Williams in the murder or conspiracy to murder. The trial judge was correct in denying the defendant's motion for judgment of acquittal. The record did not establish that Spencer was an accomplice as a matter of law.

### 5. *Deposition of Mills*

The circumstances surrounding the taking of the deposition of Castile Mills also known as Toles have been previously detailed in our discussion herein relating to the testimony of MacArthur.

There is no inherent power in the trial courts to direct the taking of depositions in criminal cases. *Kardy v. Shook*, 237 Md. 524, 207 A. 2d 83. The authority to do so is conferred and limited by Rule 727. *Collins v. State, supra.*

Rule 727 a, in part here·pertinent, reads as follows:

"If it appears that a prospective witness may be * * * prevented from attending a trial * * *, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court, may, in its discretion, upon motion of an accused or State's attorney * * * order that the testimony of such witness be taken by deposition * * *."

When he permitted the taking of the Mills deposition, the trial judge said:

"Without in the least going on the truth or falsity or accuracy or inaccuracy of the allegations in the motion by the State's Attorney to take the deposition of Miss Mills, I find as a fact that they are reasonable grounds for the motion as stated in the motion, that it appears that a prospective witness may be unable to attend or prevented from attending a trial. I find on the merits that there is reasonable grounds for the motion and I will grant the motion. My only concern is notice to the parties, reasonable notice to the parties under the provision of Maryland Rule 727-C which provides that reasonable written notice must be given to the other side. It doesn't provide for five days, it provides only for reasonable notice. Unless that is waived why we are faced with a procedural problem.

MR. GERSH: Your Honor, I can proffer to the Court at this time a written stipulation given to counsel in all matters. Counsel have up to this time said we will waive this notice and I will ask them individually. Mr. Thomas?

MR. THOMAS: We are waiving notice but we are not waiving any objection we have."

The evidence supported his decision to permit the taking of the deposition.

We find no error.

*Judgments affirmed.*