# VIRGIL SIZEMORE *v.* STATE OF MARYLAND

[No. 154, September Term, 1970.]

*Decided January 8, 1971.*

The cause was submitted to MORTON, ORTH, and THOMPSON, JJ.

*Marshall H. Feldman* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph B. Koutz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The law of crimes and punishments in the State of Maryland stems from the constitutional declaration "[t]hat the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed at the time of their first emigration; and which, by experience, have been found applicable to their local and other circumstances, and of such others as have been since made in England, or Great Britain, and have been introduced, used and

practiced by the Courts of Law or Equity * * *." [1] See *State v. Magliano*, 7 Md. App. 286. There has since flowed into this reservoir of English common law and statutes a continual stream of legislative enactments and judicial opinions which together comprise the substantive criminal law of this State today. It represents a triumph of experience over logic. It is, particularly in some areas, a potpourri, begging for revision and the adoption of a unified code of the criminal law. See for example *Farlow v. State*, 9 Md. App. 515; *Couture v. State*, 7 Md. App. 269; *State v. Magliano, supra.* The case before us provides another example.

There was abundant evidence in law that a church, the Cathedral Chapter of the Protestant Episcopal Church of The Diocese of Maryland at 4 East University Parkway in Baltimore City, had been broken and entered in the nighttime and goods over the value of $5 but under the value of $100 stolen. Virgil Sizemore was apprehended *flagrante delicto*, hiding in the church with some of the stolen property on his person. The indictment returned against him charged seven separate and distinct offenses related to those facts. At a bench trial in the Criminal Court of Baltimore he was found guilty of breaking a warehouse and stealing goods of the value of $5 and upwards. The question is whether the crime he committed was that of which he was convicted.

In the frame of reference of the question before us this jurisdiction recognizes six separate and distinct crimes related to the breaking of structures. Three of them deal with the breaking of dwelling houses and three of them with the breaking of structures other than dwellings. Of the three concerning dwelling houses, two are burglary—one under the common law and the other by statutory definition. The remaining offense pertaining to the breaking of a dwelling house and the three offenses

---

1. Art. 3 of the Declaration of Rights of the Constitution of Maryland of 1776. Art. 5 of the Declaration of Rights of the Constitution of 1867, the present law, differs only in adopting the English common law and statutes "as existed on the Fourth day of July seventeen hundred and seventy-six."

as to the breaking of structures other than dwelling houses which, for convenience are referred to as storehouse breaking, are not burglary at all.

(1) The crime of common law burglary is ordinarily defined as the breaking and entering of the dwelling house of another in the nighttime with an intent to commit a felony. *Reagan v. State*, 4 Md. App. 590, 594. Maryland accepts the common law definition but provides punishment for the commission of burglary by statute. Code, Art. 27, § 29.

(2) A statutory burglary is created by Code, Art. 27, § 30 (a). It provides that the breaking and entering of any dwelling house in the nighttime with the intent to steal the personal goods of another of any value is burglary. The punishment for its commission is set out in § 29.

(3) Code, Art. 27, § 30 (b) makes it a crime to break a dwelling house in the daytime with intent to commit murder or felony therein, or with intent to steal the personal goods of another of any value therefrom and provides the penalty for its commission.

(4) Code, Art. 27, § 32 makes it a crime to break "a storehouse, filling station, garage, trailer, cabin, diner, warehouse or other outhouse or into a boat" [2] in the day or night with an intent to commit murder or felony therein, or with intent to steal the personal goods of another of the value of $100 or more and sets the penalty for its commission.

(5) Code, Art. 27, § 33 makes it a crime to break into any "shop, storeroom, filling station, garage, trailer, boat,[3] cabin, diner, tobacco house or warehouse, although the same be not con-

---

2. The words "or into a boat" were added by Ch. 508, § 1, Acts 1968.

3. "Boat" was added by Ch. 508, § 1, Acts 1968.

tiguous to or used with any mansion house" and stealing therefrom "any money, goods or chattels" to the value of $5 or upwards and sets the penalty for its commission.

(6) Code, Art. 27, § 342 makes it a crime to break into any "shop, storehouse, tobacco house, warehouse, or other building, although the same be not contiguous to or used in any mansion house" and stealing any money, goods, or chattels under the value of $5 or with an intent to steal such property under the value of $100 and sets the punishment for its commission.

See *Melia v. State,* 5 Md. App. 354; *Martin v. State,* 10 Md. App. 274.

It seems that §§ 32, 33 and 342 cover all buildings other than dwelling houses. *Poff v. State,* 4 Md. App. 186, 188. "Storehouse" or "warehouse" has the same meaning in all three sections and it has been held that a motion picture theater, *Hackley v. State,* 237 Md. 566, a schoolhouse, *Springfield v. State,* 238 Md. 611, a fraternity house, *Buckley v. State,* 2 Md. App. 508, and an apartment used as a place for storage, *Poff v. State, supra,* was each a storehouse or warehouse under those sections. The inquiry is whether or not a church is a warehouse within their contemplation.

The issue is confused because at the common law a church was the subject of burglary. *McGraw v. State,* 234 Md. 273; *Dortch and Garnett v. State,* 1 Md. App. 173; *Hannah v. State,* 3 Md. App. 325; *Poff v. State, supra; Marston v. State,* 9 Md. App. 360. In *McGraw* the court found no authority denying that the rule that a church edifice may be the subject of burglary existed at common law but observed that doubt had been expressed only as to the reason for the rule. This doubt arose because of the question whether at common law the crime of burglary extended to the felonious breaking and entering a church because a church was a dwelling house. Lord Coke said:

"If a man do break and enter a church in the night, of intent to steal * * * this is burglary, for *ecclesia est domus mansionalis omnipotentis Dei.*" 3 Inst. 64 (1817 Ed.) But William Hawkins, Serjeant at Law, did not agree with Lord Coke. He said in his *Treatise of the Pleas of the Crown,* 8th Ed. (1824), vol. 1, Ch. 17, p. 133:

> "And *Sir Edward Coke* seems to say, that the breaking *a church,* &c. is therefore burglary, because the church is the mansion house of God. But I can find nothing in the more ancient authors to countenance this nicety; for the general tenor of the old books seems to be, that burglary may be committed in breaking houses, or churches, or the walls or gates of a town."

Noting the advisibility of including the word *mansionalis* in an indictment of burglary in a house he adds: "But surely it cannot be necessary or proper to have any such word in an indictment of burglary in a church, which, by all the books above cited, seems to be taken as a distinct burglary from that in a house." Sir Matthew Hale, Knt., "some time Lord Chief Justice of the Court of the King's Bench", was in accord with Hawkins. He observed in his *Historia Placitorum Coronae,* 1st American Ed. (1874), Vol. 1, p. 556:

> "Lord Coke says [a church] is the mansion-house of Almighty God, but this is only a quaint turn without any argument, and seems invented to suit his definition of burglary, *viz.* the breaking into a *mansion*-house, whereas it appears from *Spelman loco supra citato,* and 22 Assiz. 95, that it is not necessary to burglary, that a *mansion-house* be broken, for the breaking of churches, the walls or the gates of the city is also burglary, and the word *mansionalis* is only applicable to one kind of burglary, *viz.* the breaking of a private-house, in which case it must be a *dwelling*-house."

The Gavit edition of Blackstone's *Commentaries,* 844, reads: "The breaking open of a church is burglary, as it is the mansion-house of God; and the breaking open the gates of a town in the night comes under the same head, as the mansion-house of the municipal corporation." However, in the Christian edition, Vol. 4 at 224, he cites Coke, but relies on the statement in 1 Hawkins, P.C. 133. Hochheimer in the first edition of his Criminal Law, § 548, p. 320, states without discussion: "At the strict common law, the breaking of a church is also burglary." He gives as authority 4 Bl.Comm.224 and *Reg. v. Baker,* 3 CoxC.C.581. We believe that there were two exceptions at the common law to the general rule that burglary consisted in breaking into a mansion house (mansion house being synonymous with dwelling house), first in regard to a church, and second in regard to breaking through the walls or gates of a town. That each was burglary was because each was an exception and not because a church was the dwelling house of God or because the walls and gates of a town were the mansion house of the town corporate. Primarily burglary was an offense committed against a man's dwelling. See *People v. Richards,* 15 N. E. 371 (N. Y.) 1888, at 372. We find it clear that the Court of Appeals in *McGraw* reached the conclusion that the breaking and entering of a church was burglary at common law because it was an exception to the requirement that a dwelling house be the structure broken and entered rather than because it was considered to be a dwelling house. It held that the reference to "dwelling house" in the indictment charging the defendant with the burglary of "the dwelling house, to wit, Christ Congregational Church" might be regarded as surplusage, stating, at 277: "It is not incumbent upon the State to prove averments not necessary to a statement of the crime charged."

It is patent that except under Lord Coke's "quaint turn" a church was not a dwelling house within the meaning of the common law nor is it a dwelling house within the meaning we follow today, which is substantially that of the common law. It is not a building used regularly as a

place to sleep. *Poff v. State, supra,* at 189. Since it is not a dwelling house, it is a warehouse (or storehouse) within the contemplation of Code, Art. 27, §§ 32, 33 and 342.

The evidence established that Sizemore broke into a church and stole from thence goods of the value of $5 or upwards. Since a church is a warehouse this was the crime proscribed by Code, Art. 27, § 33 and charged in the fourth count of the indictment filed against him.[4] Since Sizemore was found guilty under the fourth count he was convicted of the crime he committed.

Appellant asked: "Can one be convicted of storehousing breaking into a church?" The answer is yes. One who breaks and enters a church in the nighttime with intent to commit a felony is guilty of common law burglary. One who breaks a church in the day or night with intent to commit murder or felony therein, or with intent to steal goods of the value of $100 or more is guilty of the storehouse breaking proscribed by Code, Art. 27, § 32. One who breaks a church in the day or night with intent value of $5 or upwards is guilty of the storehouse breaking proscribed by Code, Art. 27, § 33. One who breaks into a church and steals goods under the value of $5 or breaks into a church with the intent to steal goods under the value of $100 is guilty of the storehouse breaking proscribed by Code, Art. 27, § 342. But a person who breaks a church is not guilty of the statutory burglary proscribed by Code, Art. 27, § 30 (a) or the crime proscribed by § 30 (b) because a necessary element of those offenses is that it be a dwelling house that be broken and a church is not a dwelling house.

Appellant suggests, but does not argue in his brief, that aside from the question concerning the church as a storehouse, the evidence was not sufficient to sustain the conviction. Applying the clearly erroneous rule, Mary-

---

4. The other offenses charged were: burglary (1st count); warehouse breaking with intent to steal goods of the value of $100 and upwards (2nd count); warehouse breaking with intent to steal goods of the value of less than $100 (3rd count); rogue and vagabond (5th count); petit larceny (6th count); and receiving stolen goods (7th count).

land Rule 1086, to the test set out in *Williams v. State,* 5 Md. App. 450, we have no difficulty whatsoever in determining that the *corpus delicti* and the criminal agency of appellant were pellucidly established. There was evidence that the church was broken by forcing a window (there were jimmy marks on it) on the east side of the building. And even if it had not been shown that entrance to the building proper had been by a breaking, there was evidence that an inner door had been broken. "Breaking" has the same meaning as an element of the statutory offenses as it has as an element of common law burglary. "The breaking may occur within the house. Thus, a person who enters a house without breaking commits burglary if with the necessary intent he opens an inner door." 2 Wharton's *Criminal Law and Procedure* (Anderson), § 416, p. 40. That goods of the value of $5 or upwards were stolen was shown by direct evidence of the assistant Treasurer of the church. The criminal agency of appellant was proved by his being found in the broken premises with some of the stolen goods on his person.

To this point we have purposely avoided mention of Code, Art. 27, § 34, subtitle "Burglary with explosives", so as not to cloud the issue before us unnecessarily. However, we deem it advisable to discuss it briefly to complete the discussion of burglary. It provides:

> "Any person who breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe or other secure place by the use of nitroglycerine, gunpowder or other explosive, shall be deemed guilty of the felony of burglary with explosives. (An. Code, 1951, § 40; 1939, § 36; 1924, § 38; 1912, § 35; 1906, ch. 476; 1908, ch. 45; 1966, ch. 628, § 1.) "

It seems that it has been directly before the Court of Appeals in only one case, *Smith v. State,* 106 Md. 39 (1907). The Court stated baldly the statute did not cre-

ate a new offense but the intent was to impose a fixed and larger penalty for burglary "with explosives" than for the crime of burglary. The breaking and entering of "any building" rather than only a dwelling house and the provision that the breaking and entering may be "either by day or by night" rather than in the nighttime, distinguishes it from common law burglary and the statutory burglary discussed, *supra*. And it adds an element not present in common law burglary, statutory burglary or the other breaking offenses, namely that after the building is broken and entered there must be an opening or attempt to open any vault, safe or other secure place by the use of explosives. We can only conclude that in enacting ch. 476, Acts 1906, now codified as amended as Art. 27, § 34, the legislature created a new offense of statutory burglary—"burglary with explosives."

*Judgment affirmed.*